Nickey *v.* Zonker.

## NICKEY ET AL. *v.* ZONKER.

[No. 2,780.   Filed April 18, 1899.]

CONTRACTS.—*Executory.—Breach.—Conversion.*—Where in an executory contract for the sale of timber the seller refuses to assist in measuring and grading the timber, as provided by the contract, the buyer's proper remedy is an action for the breach of the contract; and if instead of pursuing such remedy he takes possession of the property, without the consent of the seller, and contrary to his directions, and sells it to a third person having knowledge of the facts, the original buyer and such third person will be liable to the original seller as for conversion.   *pp. 212, 213.*

JUDGMENT.—*Remittitur.—Practice.—Conversion.*—Plaintiff sued defendant for the conversion of timber in logs.   The jury returned a general verdict in favor of plaintiff for $400, and found by answers to interrogatories that plaintiff sold defendant a quantity of timber, defendant to cut the timber, and the logs to be measured and graded by both parties before being delivered by plaintiff and accepted by defendant; that a dispute arose as to the measurement and grading of the logs, and defendant took them from the premises after he had been forbidden to do so.   The jury found the amount of the timber cut, and the prices defendant was to pay for the various kinds and grades of timber, and that defendant removed 25,942 feet "or more" thereof, but did not know the value

of the timber taken. The plaintiff at the instance of the court, pending a motion for a new trial, filed a remittitur for $277.17, and judgment was rendered against defendant for $122.83. *Held*, that the verdict of the jury was contrary to law, and that the action of the court in permitting plaintiff to file a remittitur was unwarranted, and did not cure it of such defect. *pp. 213-220.*

From the Steuben Circuit Court. *Reversed.*

*D. M. Link, Sol. A. Wood, E. D. Hartman, T. R. Marshall, W. F. McNagny* and *P. H. Clugston,* for appellants.

*C. M. Phillips, S. A. Powers* and *T. A. Redmond,* for appellee.

Black, C. J.—The appellee sued the appellants, Addison B. Nickey, Samuel M. Nickey, William Nickey, and Daniel Blucher, in the DeKalb Circuit Court, for the conversion of certain timber in logs. On a trial by jury in that court a special verdict was returned, consisting of interrogatories and answers thereto, as provided for in the statute of 1895 relating to special verdicts. The court overruled a motion of the appellants for judgment on the verdict, and, upon motion of the appellee, the court granted a *venire de novo.*

Upon a careful examination of the interrogatories and answers, we find the special verdict so ambiguous and indefinite that a proper judgment could not have been rendered upon it for either party. It would not serve any useful purpose to take the space necessary to point out the defects of the verdict.

In response to the discussion of counsel upon this question, it is sufficient to say that where there is an executory contract of sale, and the seller refuses to do something which by the provisions of the contract he has reserved the right to do, as the measuring and grading of timber, which he has so contracted to sell, the buyer's proper remedy is by an action for the breach of the contract; and if, instead of resorting to such remedy, he take possession of the property without the consent of the seller, and contrary to his directions, and sell it to a third person having knowledge of the facts, the origin-

al buyer and such third person will be liable to the original seller as for conversion. See *Platter* v. *Acker*, 13 Ind. App. 417; *Morgan* v. *East*, 126 Ind. 42, 44, 45, 9 L. R. A. 558; *Lester* v. *East*, 49 Ind. 588; *Straus* v. *Ross*, 25 Ind. 300; *Williams* v. *Smith*, 7 Ind. 559; *Hogue* v. *McClintock*, 76 Ind. 205; *Kavanaugh* v. *Taylor*, 2 Ind. App. 502; *Gordon* v. *Stockdale*, 89 Ind. 240; *Louisville, etc., R. Co.* v. *Balch*, 105 Ind. 93; *Swope* v. *Paul*, 4 Ind. App. 463; *Armacost* v. *Lindley*, 116 Ind. 295.

After the granting of a *venire de novo*, the venue was changed to the court below, where a jury returned a general verdict in favor of the appellee for $400. The jury also returned answers to interrogatories submitted by the parties. The appellant Blucher for himself, and the other appellants for themselves, moved separately for a new trial. Pending this motion, the court announced to the parties that, unless the appellee would enter a remittitur for $277.17, the motion would be sustained. The appellee filed a remittitur for that amount. Thereupon the court overruled the motions for a new trial, and rendered judgment for the appellee against the appellants in the sum of $122.83.

The overruling of the motions for a new trial and the action of the court in suggesting and permitting the remittitur are assigned as error. The appellants in their motions for a new trial, assigned, with other reasons, that the verdict was not sustained by sufficient evidence, that it was contrary to law, and that the damages assessed were excessive.

It was found by the jury in answer to interrogatories, amongst other things, that the appellee, being the owner and in possession of certain land on which were growing trees, contracted verbally with the appellant Blucher for the sale of the timber on said land for agreed prices, according to the various kinds, to Blucher, who was to cut the timber, the trees being picked out and designated. Blucher was to accept and take all logs that could be cut from the designated trees, but the logs were to be measured, and graded as to quality of

timber, before they were delivered by the appellee and accepted by Blucher, and the seller and buyer were to agree upon the measurement and grade of each log, and Blucher was to pay for the logs so measured and graded, at the contract prices before they were removed from the land. Blucher was not to take any logs that would not make the grades contracted for, but all that would not fill the grades under the contract were to belong to the appellee. Both parties to the contract were to be present, and to witness the measuring and grading of the logs, and they were to agree upon the measurement and grades of the logs before the appellee should be bound to deliver, or Blucher should be bound to accept, the logs. The logs were not to become the property of Blucher as soon as cut, but they were to be measured, graded, and paid for before they should belong to Blucher, and they were to remain the property of the appellee until graded and measured to the satisfaction of the parties and paid for.

There was a dispute between the appellee and Blucher as to the measurement of the logs, and as to the grading thereof as to quality, and as to the price to be paid for some of the grades of logs, and the appellee forbade Blucher from taking the logs from the land, and objected to his taking possession of any of them until the appellee should have them measured. Blucher, by the other appellants, took the logs from the premises after he had been forbidden to do so. The appellee notified the appellants, before any of the logs were removed, that they should not take any of them. The appellee did not complete the measurement or the grading of the logs. He employed one Smith to measure and grade the logs, but Smith and Blucher disagreed as to the grades and the measurement, and Smith refused to proceed with the measurement because of such disagreement.

The jury answered that they did not know the value at the appellee's farm of all the logs which were taken by the appellants from the farm. Blucher was buying the logs to

be resold to the other appellants, who furnished the money with which to buy them, and the logs were hauled away from the appellee's farm by said other appellants, over the appellee's objection, after being forbidden to do so by the appellee, and were mixed with other logs in the mill yard of said other appellants. The logs which were hauled away were not measured and graded according to the contract.

The jury found specially the prices which, by the contract, were to be paid for the various kinds and grades of the timber. It was also found that Blucher cut 46,019 feet of timber, under the contract, and that Blucher sold the timber to the Nickeys for $409.23; that the Nickeys removed 25,942 feet "or more" of said timber to their mills; that the timber cut, under the contract, was worth $400; that none of the timber was removed in compliance with the terms of the contract, but Blucher measured and graded the timber in the absence of the appellee; that when Blucher sold the timber to the Nickeys, he and they did not honestly believe that he had a right to sell it, and when the Nickeys removed the timber they did not honestly believe that they had a right to remove it; that all the timber removed except 150 railroad ties, which were removed by Blucher, was removed by the Nickeys. The jury also found the number of feet of each grade of the timber cut, with the value of each grade per 1,000 feet, and the value of the quantity of each grade cut, the whole amounting to $409.23, and that the Nickeys bought all the timber except 337 ties.

The jury did not specially find the quantity of timber that had been removed. They did not state how many feet of each grade or of any grade or of all grades had been removed. They did not find the value of the timber removed, but the amount of their verdict was what they stated to be the value of the logs cut. The general verdict appears to have been rendered upon the theory that the appellee was entitled to recover for all the timber cut. The evidence was conflicting concerning the quantity of the timber cut, and remaining on

the land, and therefore not converted by the appellants, but still in the possession of the appellee. One witness for the appellee testified that the timber remaining on the land measured 27,000 feet. Other witnesses testified to various other quantities of timber still on the land. The court, properly regarding the damages assessed as excessive, determined, without the assistance of the jury, the amount which should be deducted.

The practice of permitting a party to enter a remittitur to avoid the granting of a new trial is very generally allowed, where the proper amount can by calculation be ascertained, upon facts established on the trial. In actions where there is no legal measure of damages, the weight of authority seems to support the practice of permitting a remittitur to reduce the verdict to an amount which the court regards as reasonable. While this practice is sometimes criticised as an invasion of the province of the jury, and as illogical, it is said to work well in practice. 28 Am. & Eng. Ency. of Law 317; Suth. on Dam. section 460; Hale on Dam. 235.

In *Cromwell* v. *Wilkinson*, 18 Ind. 365, which was an action for a breach of contract of sale brought by the buyer against the seller, where the trial court had permitted the defendant to remit, the Supreme Court, per Perkins, J., said: "In a case where damages depend upon calculation, as upon a promissory note, the court might take a remittitur of excess, and it would cure error; but where damages depend upon judgment on conflicting evidence, or notions of compensation for tort—questions for the jury—we do not think the *nisi prius* court, when differing with the jury, has the right to fix the amount itself, and then render judgment for it. * * * We do not mean to say that a party may not in any case make a voluntary remission of any or all the amount he may have recovered."

In *Carmichael* v. *Shiel*, 21 Ind. 66, which was an action for slander and malicious prosecution, wherein, pending a motion for a new trial, the plaintiff remitted a portion of the

damages awarded by the jury, and thereupon the court over-ruled the motion for a new trial, the court, per Perkins, J., said, that if the plaintiff made the remission to prevent the granting of a new trial, it would constitute, according to *Cromwell* v. *Wilkinson, supra,* an error for which the judgment might be reversed, and that the ruling in *Cromwell* v. *Wilkinson* would seem to be correct on principle; "yet, as there are authorities the other way, the point had better be left open for reconsideration."

In *Terre Haute, etc., R. Co.* v. *Jarvis,* 9 Ind. App. 438, an action to recover for injury to sheep, and for destruction of rails and fencing, it was held that this court could not direct a remittitur as to any amount of the verdict for the plaintiff that might rest on the paragraph of the complaint for loss of rails and fencing, the court remarking: "When the amount of the recovery is a mere matter of calculation, and the evidence furnishes the basis, then an appellate court may make the calculation, and order a remittitur; but if the evidence is uncertain or conflicting as to the basis of the recovery, or if the recovery be of that character which is left largely to the discretion of the jury, a new trial will be ordered."

In *Cleveland, etc., R. Co.* v. *Beckett,* 11 Ind. App. 547, an action for damages for wrongful expulsion from a railway train, where there was a verdict for the plaintiff for $1,000, and the trial court required him to remit $500, or submit to a new trial, it was said by this court that the preponderance of the decisions favors the right of the courts to direct conditionally the remission of a part of the damages, in cases where there is no definite standard by which to measure the damages, and that if the trial court believe the verdict right, except as to the amount, it may, in the exercise of a sound discretion, in such cases, permit the plaintiff to elect whether he will remit part of the damages or suffer a new trial, and that if the remittitur is made, the question then is whether or not the damages thus reduced are excessive.

In *Tucker* v. *Hyatt*, 151 Ind. 332, an action for malicious prosecution, where there was a verdict for the plaintiff for $8,000, it was held that there was no error in permitting a remittitur of $3,000, and rendering judgment for the remainder, citing *Cleveland, etc., R. Co.* v. *Beckett, supra.*

The case at bar is one in which there is a legal measure of damages. It is not of the class of cases in which on appeal the verdict must be allowed to stand, unless it appear to be the result of prejudice or other improper motive, but it is a case where the injury sued for is wholly pecuniary, and the amount of recovery must be reached upon evidence of the market value of the property involved. This is the legal standard of damages by which the case is controlled. "If the jury have decided, upon the testimony submitted to them, several items or elements of damages, and on review one or more of them are held to be improperly included, a remission of so much as was thus improperly allowed, when the amount can be ascertained, will remove the objection to such excess. But where the erroneous part so allowed cannot be ascertained, and it is impossible to tell what the jury acted upon, or how they made up their verdict, under the charge of the court, so as to correct the error, and arrive at the amount they should have given, justice between the parties cannot be done by a remittitur." Suth. on Dam. section 459; Hale on Dam. 234, and cases cited. Where it was impossible to determine what the jury acted upon, or how they made up their verdict, under the charge of the judge, so as to correct the error, and arrive at the amount they should have given, and the amount to be remitted, the Supreme Court of Minnesota refused to permit a remittitur in an action on promissory notes for goods sold, where there was a defense of breach of warranty. *Smith* v. *Dukes*, 5 Minn. 373. In a similar case, where the error in the verdict could be corrected by computation based on uncontradicted evidence, a remittitur was held to be permissible. *Brown* v. *Doyle*, 69 Minn. 543, 72 N. W. 814.

Nickey v. Zonker.

In *McCormick Harvesting Mach. Co.* v. *Wesson*, (Tex. Civ. App.), 41 S. W. 725, an action for conversion of property consisting of a number of articles, each valued separately in the verdict, it was said by the court: "Where the verdict, like this one, consists of a number of items, each valued separately, and the valuation of any one of them is excessive, and it is evident to the judge that the excess is due to a miscalculation of interest, he may make the calculation correct, and if the amount of excess is remitted, refuse a new trial. And also, if the value of one of the items as found is excessive, and it is evidently a mistake of the jury, and not caused by prejudice or other improper motive, and the facts proven are uncontradicted as to the value of the item, then the court may refuse a new trial if the excess on that item is remitted."

In *Lambert* v. *Craig*, 12 Pick. 199, it was said: "The jury allowed the plaintiff's whole claim, notwithstanding it was proved, that before the commencement of this action, he had received 'a horse, wagon and sundry articles of clothing of considerable value, which should be deducted from his wages;' and immediately after the verdict was returned, the plaintiff offered to remit such sum as ought to be deducted on account of the horse, wagon and clothing. It is therefore quite clear, by the plaintiff's own admission, that the value of these articles ought to have been deducted from the plaintiff's demands. If that value had been ascertained, the amount might be now remitted and judgment entered for the residue; but unless the parties can agree as to the value, it must be ascertained by a jury, and a new trial is granted for that purpose."

It appears from the special findings of the jury that the damages awarded in the general verdict were based upon a theory contrary to law,—the theory that the appellee was entitled to recover for the full value of all the timber embraced in the executory contract of sale, where he was only entitled to recover the market value of the timber converted. While the whole quantity cut by the appellant Blucher, and

the value of the various kinds, were found specially, the quantity and grades of the timber taken away were not found, and the court could not ascertain the quantity and grades of the timber remaining and thereby arrive at a proper amount to be remitted, without deciding, upon conflicting evidence, a matter of fact, which, having been submitted to the jury, could not be determined by the court without invading the province of the jury. The burden was upon the appellee, the plaintiff, to establish the quantity and value of the property alleged to have been converted. It was no fault of the appellants that these matters were not found or proved, but they had the right to have them proved and decided by the jury before any recovery against them. They never were decided by the jury. If they had been decided by the jury in the general verdict within the evidence, we could not disturb their conclusion on the ground of conflict in the evidence. Where a question of fact is properly submitted to a jury, neither the trial court nor this court can rightfully decide it upon the evidence.

If it can be said, with certainty, that the verdict as reduced by the allowance of the remittitur is within the conflicting evidence, the appellants have been deprived of their right, which they never consented to forego, to have the judgment of the jury upon the credibility of the witnesses and the weight of evidence upon matters of fact, the decision of which was not within the mere discretion of the triers, uncontrolled by any fixed rule of law, but was subject to a definite rule of measurement of damages. The verdict of the jury was contrary to law, and the unwarranted action of the court could not cure it of such defect.

The judgment is reversed, and the cause is remanded for a new trial.